OPINION.

SMITH: In the estate-tax return filed by the Guaranty Trust Co. of New York for Claire Louise Burton, deceased, there was deducted from the gross estate $127,035, upon the ground that this amount was received by the decedent from the estate of her husband, who died less than five years prior to the date of the death of the decedent. The deduction was disallowed by the Commissioner, apparently upon the ground that the $127,035 could not " be identified as having been acquired in exchange for property " received from the estate of the decedent's husband.

The law applicable to the issue involved is section 403 (a) (2) of the Revenue Act of 1921, which permits the deduction from the gross estate of a decedent, in the determination of the net estate, of " an amount equal to the value of any property forming a part of the gross estate situated in the United States of any person who died within five years prior to the death of the decedent where such property can be identified as having been received by the decedent from such prior decedent by gift, bequest, devise, or inheritance, or which can be identified as having been acquired in exchange for property so received."

In the instant appeal the decedent received from the administrator of the estate of Frank Vincent Burton, in settlement of certain pending law suits, the sum of $127,035. The Board is not informed of the character of these law suits, or whether the amount constituted a " gift, bequest, devise, or inheritance " received from the estate of her deceased husband.

On reference to the Board, JAMES did not participate.

---

## APPEAL OF SHEET METAL CONSTRUCTION CO., INC.

Docket No. 5089. Submitted November 10, 1925. Decided January 26, 1926.

Samuel V. Markley, Esq., for the taxpayer.
M. N. Fisher, Esq., for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits tax for the year 1919 in the sum of $771.46. The deficiency arose from the refusal of the Commissioner to permit the taxpayer to file a consolidated return with the Masters Waterproofers, Inc., an alleged affiliated corporation.

### FINDINGS OF FACT.

1. The taxpayer is a New York corporation, organized in July, 1919. It issued 60 shares of capital stock of a par value of $100 each as follows: Monroe S. Goldberg, 20 shares; Arthur D. Hyman, 20 shares; Max Kestenbaum, 20 shares.

2. The Masters Waterproofers, Inc., was also a New York corporation, of which the sole stockholders were the above-named Monroe S. Goldberg and Arthur D. Hyman, who owned 340 shares each. In July, 1919, the stock and interest of the said Goldberg and Hyman in the taxpayer were purchased by and turned over to the said Masters Waterproofers, Inc. The remaining 20 shares of the taxpayer were still held in the name of Kestenbaum, who was employed by the taxpayer, as hereinafter set forth. Kestenbaum paid for his 20 shares of stock by turning over to the taxpayer a small sheet-metal plant and equipment, at a valuation of $1,200, and giving a note for $800 secured by the stock as collateral. The pertinent parts of the instrument evidencing the sale of the sheet-metal plant are as follows:

Know all men by these presents: that Max Kestenbaum, of No. 741 DeKalb Ave., in the Borough of Brooklyn, City and State of New York, hereinafter designated as the vendor, for and in consideration of the sum of One Dollar to him in hand paid before the ensealing and delivery of these presents, by the Sheet Metal Construction Co., Inc., hereinafter designated as the vendee, the receipt whereof is hereby acknowledged, and for other valuable consideration, has bargained and sold and by these presents does grant and convey to the said vendee, its successors and assigns, the business now and heretofore conducted by him at No. 741 DeKalb Ave., in the Borough of Brooklyn, City and State of New York, including the good will thereof, stock in trade, machines, fixtures, appurtenances and contracts on hand for work to be performed by him, to have and to hold the same unto the said vendee, its successors and assigns forever.

The Masters Waterproofers, Inc., was engaged in the contracting business, and purchased the plant of the said Kestenbaum for the purpose of operating it as a branch or a department. The stock was purchased as above set forth and the said Kestenbaum was employed as manager of this plant. The pertinent parts of the contract of employment between the Sheet Metal Co., Inc., and Kestenbaum were as follows:

1. The party of the First Part hereby employs and the party of the Second Part agrees to be employed by the party of the First Part, and diligently and faithfully apply himself to the business of the party of the First Part, as its factory superintendent and manager, and that he will diligently, faithfully, lawfully and honestly serve the party of the First Part in such capacities, pursuant to and in accordance with the orders of its Board of Directors, for a period of two years from July 19, 1919, and that he will at all times obey the orders and instructions of the Board of Directors of the party of

the First Part, and will devote his time, exclusively, and he will not engage in any other business, endeavor or effort at any time during the continuance of this employment, except such duties as he may be compelled to perform as an officer and director of the party of the First Part.

2. The party of the First Part agrees to employ the party of the Second Part in the capacities aforementioned, and to pay him for his services Seventy-Five Dollars ($75) per week, payable weekly, during the term of this contract, in addition to such salary as may be voted to him by the Board of Directors.

3. The party of the First Part will have the right to terminate this contract at any time prior to the expiration of the term aforementioned, upon the institution of proceedings of the dissolution thereof.

In order to retain control of the stock, a written agreement was entered into by and between Kestenbaum and the said stockholders of the Masters Waterproofers, Inc., whereby they agreed to purchase Kestenbaum's stock on demand and they were to have the first right to purchase said stock. The pertinent parts of this agreement were as follows:

Now, therefore, in consideration of their several contributions to the capital of the Sheet Metal Construction Co., Inc., and for other valuable considerations, the parties of the first part have agreed to and with the party of the second part that they will, at any time during the continuance of the Sheet Metal Construction Co., Inc., purchase from the party of the second part when offered by him for sale such capital stock of the company as he may then own at a price representing the actual value of such stock, based upon a valuation of the property of the company, without any allowance for good will, and they hereby obligate themselves to purchase and pay for such shares of stock on demand, and all the parties hereto agree with one another that they will not sell any of their stock of the Sheet Metal Construction Co., Inc., without first affording each of the other parties to this agreement the opportunity to buy such stock at a value represented by the actual value of the property of said company, without any allowance for good will.

Thereafter, the taxpayer was operated as a branch or department of the said Masters Waterproofers, Inc., which assumed liability for all bills of the taxpayer, met its obligations, and furnished the necessary capital to run the business. During the year 1919, it held all of the 20 shares of stock of Kestenbaum as collateral for the said note of $800, and said stock was not voted during that time by Kestenbaum, nor did he take part in any stockholders' meetings. Subsequently, in 1921, his stock was purchased by the Masters Waterproofers, Inc. The taxpayer and Masters Waterproofers, Inc., were, during the period from July to December, inclusive, 1919, affiliated corporations.

### DECISION.

The deficiency should be computed in accordance with the foregoing findings of fact. Final determination will be settled on 15 days' notice, under Rule 50.